## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| **DAVID NIEDERST,** | ) | |
| 5832 Armada Ct. | ) | |
| Cape Coral, Florida 33914, | ) | CASE NO. 1:23-CV-117 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE |
| v. | ) | |
| | ) | |
| **MINUTEMAN CAPITAL, LLC,** | ) | |
| c/o Jonathan D. Heavey | ) | |
| 19885 Detroit Road #148 | ) | |
| Rocky River, Ohio 44116, | ) | |
| | ) | |
| **-and-** | ) | |
| | ) | |
| **JONATHAN D. HEAVEY,** | ) | |
| 20922 Avalon Dr. | ) | |
| Rocky River, Ohio 44116, | ) | |
| | ) | |
| **-and-** | ) | |
| | ) | |
| **DAVID NEUNDORFER,** | ) | |
| 3350 Maynard Rd., | ) | |
| Shaker Heights, Ohio 44122, | ) | |
| | ) | |
| **-and-** | ) | |
| | ) | |
| **DAVID CROFT,** | ) | |
| 3346 Glentrool Ln | ) | |
| Richfield, Ohio 44286, | ) | |
| | ) | |
| **-and-** | ) | |
| | ) | |
| **PATRICK CROKE,** | ) | |
| 455 West Webster Ave. | ) | |
| Chicago, Illinois 60614, | ) | |

|                                         |     |
|-----------------------------------------|-----|
| **-and-**                               | )   |
|                                         | )   |
|                                         | )   |
| **KIEREN JAMES-LUBIN,**                 | )   |
| 152 Driggs Ave. Num. 2                  | )   |
| Brooklyn, New York 11222,               | )   |
|                                         | )   |
| **-and-**                               | )   |
|                                         | )   |
| **MARK CARAWAY,**                       | )   |
| 9 Date St.                              | )   |
| Central Islip, New York 11722,          | )   |
|                                         | )   |
| **-and-**                               | )   |
|                                         | )   |
| **ADAM HUDAK,**                         | )   |
| 3473 Tree Ln.                           | )   |
| North Olmsted, Ohio 44070,              | )   |
|                                         | )   |
| **-and-**                               | )   |
|                                         | )   |
| **DAVE ALTMAN,**                        | )   |
| 1345 6th Ave.                           | )   |
| New York, New York 10105,               | )   |
|                                         | )   |
| **-and-**                               | )   |
|                                         | )   |
| **BRENT LESLIE,**                       | )   |
| 20798 Erie Rd.                          | )   |
| Rocky River, Ohio 44116,                | )   |
|                                         | )   |
| **-and-**                               | )   |
|                                         | )   |
| **ANDY WILLIAMS,**                      | )   |
| 5417 Driftway Dr.,                      | )   |
| Fort Worth, Texas 76135,                | )   |
|                                         | )   |
| **-and-**                               | )   |
|                                         | )   |
| **GRAHAM GUNST,**                       | )   |
| 39 McAllister Ave.                      | )   |

2

Kentfield, California 94904,　　　　　　)
　　　　　　　　　　　　　　　　　　)
**-and-**　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
**KEVIN McGINTY**,　　　　　　　　　)
3609 Warren Rd.,　　　　　　　　　　　)
Cleveland, Ohio 44111,　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　Defendants.　　)
　　　　　　　　　　　　　　　　　　)

---

**COMPLAINT FOR INJUNCTIVE RELIEF AND MONEY DAMAGES**
**(JURY DEMAND ENDORSED HEREON)**

---

Plaintiff David Niederst ("***Niederst***" or "***Plaintiff***"), by and through counsel, for his Complaint against Defendants Minuteman Capital, LLC ("***Minuteman***"), Jonathan Heavey ("***Heavey***"), David Neundorfer ("***Neundorfer***"), David Croft ("***Croft***"), Patrick Croke ("***Croke***"), Kieren James-Lubin ("***James-Lubin***"), Mark Caraway ("***Caraway***"), Adam Hudak ("***Hudak***"), Dave Altman ("***Altman***"), Brent Leslie ("***Leslie***"), Andy Williams ("***Williams***"), Graham Gunst ("***Gunst***"), and Kevin McGinty ("***McGinty***") (collectively, the "***Defendants***"), states as follows:

<u>**PRELIMINARY STATEMENT**</u>

1.　　　Defendants published a disparaging corporate marketing video (the "***Video***"),[1] entitled *Fueled By Freedom: Two If By Sea*, to YouTube.com ("***YouTube***").

---

[1] The YouTube video, entitled *Fueled by Freedom: Two if By Sea* can be found here: https://www.youtube.com/watch?v=bkXh5QpnW6w.

3

4854-6273-6716, v. 2

2. With the Video, Defendants purposefully set out to harm and disparage Plaintiff's reputation, businesses, and economic interests all while tactlessly promoting Defendants' business and services.

3. Since its publication, the Video has been viewed by internet users over 16,000 times and has been shared to various other social networking sites, including, but not limited to, Facebook.

4. Defendants also published an open letter (the "*Letter*") on the Minuteman website to disparage Plaintiff.

5. Plaintiff understands that the Video has been viewed not only by his neighbors and tenants, but also his customers, lenders, and investors as well. As such, Defendants have harmed and endangered, and continue to harm and endanger, Plaintiff and his business interests.

## NATURE OF THE ACTION

6. This is an action for: (i) defamation; (ii) harassment; (iii) unfair trade practices; (iv) tortious interference with business relationships; (v) intentional infliction of emotion distress; and (vi) equitable relief in the form of preliminary and permanent injunctions, *e.g.*, permanent removal of the Video and the Letter, under Fed. R. Civ. P. 65.

## PARTIES

7. Plaintiff Niederst is an individual maintaining his permanent residence in the State of Florida. Niederst is an owner, member, or shareholder of multiple real estate entities

4

with assets and operations in the State of Florida. Niederst was at his residence in the State of Florida when the Video was published.

8. Defendant Minuteman is a limited liability company organized under the laws of the State of Ohio, with its principal place of business in Cuyahoga County, Ohio.

9. Minuteman offers, or purports to offer, ownership shares to real estate portfolios with the use of blockchain technology, such that investors can track and trace their investments transparently, allocate specific resources to certain investment opportunities, and freely sell their shares.

10. Defendant Heavey is an individual residing in Cuyahoga County, Ohio. Plaintiff understands that Heavey is an owner, member, director, and officer of Minuteman.

11. Defendant Hudak is an individual residing in Cuyahoga County, Ohio. Plaintiff understands that Hudak was an owner, member, officer, director, and/or employee of Minuteman at the time the Video was published.

12. Plaintiff understands that Defendant Altman is an individual residing in the State of New York and that Altman was an owner, member, officer, director, and/or employee of Minuteman at the time the Video was published.

13. Defendant Leslie is an individual residing in Cuyahoga County, Ohio. Plaintiff understands that Leslie was an owner, member, officer, director, and/or employee of Minuteman at the time the Video was published.

4854-6273-6716, v. 2

14.    Defendant Williams is an individual residing in the State of Texas. Plaintiff understands that Williams was an owner, member, officer, director, and/or employee of Minuteman at the time the Video was published.

15.    Defendant Gunst is an individual residing in the State of California. Plaintiff understands that Gunst was an owner, member, officer, director, and/or employee of Minuteman at the time the Video was published.

16.    Defendant McGinty is an individual residing in Cuyahoga County, Ohio. Plaintiff understands that McGinty was an owner, member, officer, director, and/or employee of Minuteman at the time the Video was published.

17.    Defendants Heavey, Hudak, Altman, Leslie, Williams, Gunst, and McGinty were publicly listed as Minuteman's "Team Members" at the time the Video was published. *See* January 24, 2021 screen captures of Minuteman's website, attached as **Exhibit A**.

18.    Plaintiff understands that as Minuteman's publicly listed "Team Members," Defendants Heavey, Hudak, Altman, Leslie, Williams, Gunst, and McGinty may have participated in the making of the Video and publication of the Letter and profited from the publication of the Video and the Letter.

19.    Defendant Neundorfer is an individual residing in Cuyahoga County, Ohio. Plaintiff understands that Neundorfer was an owner, member, officer, director, consultant, and/or employee of Minuteman at the time the Video was published.

4854-6273-6716, v. 2

20.     Defendant Croft is an individual residing in Summit County, Ohio. Plaintiff understands that Croft was an owner, member, officer, director, consultant, and/or employee of Minuteman at the time the Video was published.

21.     Defendant Croke is an individual residing in the State of Illinois. Plaintiff understands that Croke was an owner, member, officer, director, consultant, and/or employee of Minuteman at the time the Video was published.

22.     Defendant James-Lubin is an individual residing in the State of New York. Plaintiff understands that James-Lubin was an owner, member, officer, director, consultant, and/or employee of Minuteman at the time the Video was published.

23.     Defendant Caraway is an individual residing in the State of New York. Plaintiff understands that Caraway was an owner, member, officer, director, consultant, and/or employee of Minuteman at the time the Video was published.

24.     Defendants Neundorfer, Croft, Croke, James-Lubin, and Caraway were publicly listed as Minuteman's "Advisors" at the time the Video was published. *See* Exh. A.

25.     Plaintiff understands that as Minuteman's publicly listed "Advisors," Defendants Neundorfer, Croft, Croke, James-Lubin, and Caraway may have participated in the making of the Video and publication of the Letter and profited from the publication of the Video and the Letter.

## JURISDICTION AND VENUE

26.     This Court has jurisdiction over this subject matter pursuant to at least 28 U.S.C. § 1331 and 28 U.S.C. § 1332 since: (i) Plaintiff is a Florida resident; (ii) Plaintiff brings

claims under 15 U.S.C. § 1125(a); (iii) none of the Defendants may be considered Florida residents for purposes of diversity jurisdiction; and (iv) the amount in controversy exceeds $75,000.

27.     This Court has personal jurisdiction over all Defendants.

28.     Defendants are subject to personal jurisdiction in this Court because: (i) certain Defendants reside in Cuyahoga County, Ohio; (ii) Minuteman is organized as a limited liability company under Ohio law; (iii) Minuteman maintains its principal place of business in Cuyahoga County, Ohio; (iv) Minuteman conducts its business in Cuyahoga County, Ohio; and (v) all Defendants were associated with Minuteman, an Ohio business, at the time the Video was published.

29.     Venue is proper in this Court pursuant to at least 28 U.S.C. § 1391(b)(3) since all Defendants are subject to personal jurisdiction in this District through their association with Minuteman, a business operating in Ohio.

**FACUTAL BACKGROUND**

30.     On or after January 23, 2021, Minuteman published the Video on YouTube.

31.     YouTube is an internet video sharing website where users can create and publish video content which can be liked, saved, commented on, and shared with other internet users.

32.     YouTube also permits persons within the United States to view, comment, and share media, including the Video.

8

33. Defendants initially published the Video on Minuteman's corporate YouTube account, which identifies Minuteman by utilizing Minuteman's name, brand, and logo. *See* Minuteman Capital YouTube Profile as of January 24, 2021, attached as **Exhibit B**.

34. Heavey subsequently renamed the YouTube account to "Jon Heavey." *See Jon Heavey*, YOUTUBE (Last visited: January 20, 2023), https://www.youtube.com/channel/UCWIb96q7WxgetfjNQnWlRiw.

35. The YouTube account still contains promotional videos for Minuteman.

36. The Video additionally contains a caption directing Internet users to visit Minuteman's website.

37. Additional disparaging publications related to the Video are detailed on Minuteman's corporate website in the form of the Letter at the following URL: https://minutemancapital.com/about/.

38. Plaintiff understands that the Video and Letter were created for the purpose of disparaging Niederst while deceptively marketing Minuteman's real estate investment services. *See id.*

39. Told from Heavey's perspective in the first-person narrative, Defendants disparage Niederst for his political views and associate him with certain events leading up to President Biden's inauguration on January 20, 2021 (the "*Inauguration*"). *See generally* Minuteman Capital, *Fueled By Freedom: Two If By Sea*, YOUTUBE, (Jan. 23, 2021), https://www.youtube.com/watch?v=bkXh5QpnW6w.

40.     The Video ultimately attempts to cheaply sell viewers on the idea that Minuteman can generate profits for investors in the real estate industry using their purported patents centered around blockchain technology while simultaneously getting justice from Plaintiff for allegedly improper business dealings. *See generally id.*

41.     To somehow make Minuteman more marketable at Plaintiff's expense, the Video shows Heavey venturing onto Lake Erie—directly behind Niederst's Ohio property— to set off fireworks on or about January 20, 2021. *See generally id.*

42.     The Letter references the circumstances in the Video, infers that Plaintiff relies on corruption to enrich himself at the expense of others, and further claims that Minuteman endeavors to "shed light on dark money."

## I.     Defendants Attack Plaintiff to Market Their Real Estate Fund

### A. *Defendants Wrongfully Associate and Mischaracterize Plaintiff in the Video's Opening.*

43.     During the first twenty seconds of the Video, Defendants mischaracterize Niederst and associate Niederst, and by extension his business interests, with individuals present at the January 6, 2021, events at the Capitol (the "***Capitol Events***"). *See id.*

44.     For example, from 00:10 to 00:14, Defendants state that Niederst likely associates with "Mr. Zip Ties" or "Mr. Busted by My Ex-Wife,"[2] when referring to individuals in photographs from the Capitol Events. *Id.* at 00:10 to 00:14.

_____

[2] "Mr. Busted by My Ex-Wife" refers to Larry Rendall Brock, who was arrested for his role in the Capitol Events. *See* Claire Lampen, *Capitol Eventsist's Ex-Wife Identified Him to the Feds,*

45.     From 00:16 to 00:19, Defendants show pictures of Niederst and Niederst's family. *Id.* at 00:16 to 00:19.

46.     At 00:19 to 00:22, Defendants claim Niederst is associated with the tattooed, shirtless man, who wore a fur hat with horns when he stormed the Capitol.[3] *Id.* at 00:19 to 00:22.

47.     From 00:23 to 00:35, Defendants identify Niederst's Ohio property and state that Niederst "tore" the home sitting in front the Niederst property "into the dirt." *Id.* at 00:23 to 00:35.

48.     Defendants then allege that Niederst's decision was "to make room for his false idol—this Sieg Heil looking statute," and displays still images of political signs and statutes that were on Niederst's Ohio property. *Id.* at 00:36 to 00:40.

49.     After the 2020 Election concluded, all political signage and displays were removed from the front lawn of Niederst's Ohio property.

50.     Defendants compare Heavey to Trump—stating that Trump is a "draft-dodging coward," while Heavey has fought in combat. *Id.* at 00:40 to 00:57.

51.     At the 00:58 mark, Defendants launch into an obscenity filled tirade about "Nazis," "white supremacists," and "proud boys." *Id.* at 00:58 to 1:11.

---

THE CUT, Jan. 11, 2021 (https://www.thecut.com/2021/01/capitol-rioter-larry-rendall-brock-identified-to-fbi-by-ex.html).

[3] Defendants are referring to QAnon affiliate Jake Angeli in this portion of the Video. *See Horned, Shirtless Man at the Capitol Demonstration Identified*, WATE, Jan. 7, 2021, https://www.wate.com/news/horned-shirtless-man-at-the-capitol-demonstration-identified/.

**B.** *Heavey Sets Off Fireworks In Front of Niederst's Ohio Property.*

52.    From 1:12 to 1:30, Defendants state that Heavey purchased fireworks and set them off in front of Niederst's Ohio property, catching his yard on fire. *Id.* at 1:12 to 1:30.

53.    As a result of Heavey's fireworks display, Heavey was issued an arrest warrant. *Id.*

54.    Heavey was later arraigned and pleaded not guilty to a charge of fireworks possession/sale/discharge in the case styled *State of Ohio, Rocky River vs. Jonathan Heavey*, 20 CRB 1876, Rocky River Municipal Court.

**C.** *Defendants First Reference Blockchain Patents.*

55.    At the 2:09 mark, Defendants begin to discuss purported patents that Heavey filed. *Id.* at 2:09.

56.    Heavey first references patent application number 16/186,203, which was published on May 9, 2019 (the "'*203 Patent*"). *Id.*

57.    Minuteman is the listed applicant for the '203 Patent. *Id.*

58.    Heavey is the listed inventor for the '203 Patent. *Id.*

59.    Despite the '203 Patent's publication in 2019, Defendants insinuate that the '203 Patent was created due to political debates regarding $600 stimulus checks, while politicians gave "themselves a raise for the millions of dollars they steal from taxpayers." *Id.* at 2:17 to 2:27.

60.     Defendants continue: "Nobody does that better than Trump himself, of course, I mean he is the king of the corruption swamp, or so I thought," which clearly implies that Defendants believe Plaintiff to be corrupt. *Id.* at 2:30 to 2:38.

### D. *Defendants Make Disparaging Remarks About Niederst.*

61.     Beginning at 2:39, Defendants relate Niederst to Trump and state that the purported patents are used to find information about Niederst and his real estate entities. *Id.* at 2:39 to 2:53.

62.     While displaying purported tax lien records, Defendants state that "[Niederst] must have an explanation for why [Niederst] cheats on his taxes." *Id.* at 2:53-56.

63.     Then, while showing Niederst's loan records, Defendants claim that there are "millions upon millions upon millions of mortgage fraud," related to Plaintiff. *Id.* at 3:03 to 3:10.

64.     Defendants then claim that Plaintiff has received millions in "socialist handouts and entitlements." *Id.* at 3:12 to 3:16.

65.     Defendants call the alleged "millions of mortgage fraud" and "socialist handouts and entitlements" a pittance, when considering Niederst, and by extension his business entities, "is involved in 500 or some odd bankruptcy cases. Those are on his Section 8 property portfolio—a portfolio that's also conveniently kept afloat with socialist handouts." *Id.* at 3:17 to 3:30.

66.     Contrary to Defendants' assertions, neither Plaintiff nor his businesses have ever filed for bankruptcy.

67.     Defendants further claim that Niederst received $42 million in profits from "toxic waste sites" and mention a previous lawsuit against Niederst for $750,000 for "fraud." *Id.* 3:31 to 3:38.

68.     Defendants reiterate that they are purposefully using the word "socialist" with reference to Niederst because of the negative connotations stemming from socialist ideologies. *Id.* at 3:39 to 3:46.

69.     While elaborating on Heavey's resume, Defendants discuss more purported patents, displaying an image of the '203 Patent, that Defendants use on the free market to "bust a mortgage fraud and a tax cheat," referring to Niederst. *Id.* at 3:47 to 4:00.

70.     With a picture of Heavey's home displayed, Defendants market their ability to help viewers make "cash bounties by beating a communist like [Niederst] at his own fraudulent game." *Id.* at 4:01 to 4:20.

71.     Afterwards, Defendants reference the possibility of Niederst being arrested and "spending quality time with [Heavey's] buddies over at the police department." *Id.* 4:20 to 4:28.

E.  *Heavey Sets Off More Fireworks.*

72.     After admitting that police officers told Heavey not to set off any additional fireworks on the sidewalk, Defendants show Heavey's plan to set off more fireworks on Lake Erie behind Niederst's Ohio property after the Inauguration. *Id.* at 4:30 to 4:47.

14

73.     With Bruce Springsteen's *Born in the U.S.A.* and Chumbawumba's *Tubthumping* playing, the Video shows Heavey walking to Lake Erie to set off the fireworks and the back porch of Niederst's Ohio property as fireworks explode. *Id.* 4:47 to 8:00.

**F.     *Minuteman Capital's Approval and References to the Video.***

74.     Beyond Minuteman's decision to post the Video to its YouTube account, the Video shows a Minuteman slogan, "Live for the Fight," at the 8:10 mark and then the Minuteman logo at the 8:13 mark. *Id.* at 8:10 to 8:15.

75.     The Minuteman logo displayed in the Video as well as Minuteman's marketing and investor materials, and previously the Minuteman YouTube account was also prominently displayed on Minuteman's website at https://minutemancapital.com/. *See* MINUTEMAN CAPITAL, https://minutemancapital.com/ (Last visited Jan. 20, 2023); *see also* MINUTEMAN CAPITAL, *Backed By Land Fueled By Freedom* Presentation, attached as **Exhibit C** ("***Minuteman's Presentation***"); MINUTEMAN CAPITAL, *Qualified Opportunity Fund*, (Jan. 31, 2020),     https://minutemancapital.com/wp-content/uploads/2020/07/Minuteman-Capital-White-Paper.pdf, and attached as **Exhibit D** ("***Minuteman's Whitepaper***").

76.     In Minuteman's Whitepaper and Minuteman's Presentation, Minuteman specifically uses the term "Fueled By Freedom" to describe and market its business to potential investors.

77.     The Video is titled *Fueled By Freedom: Two If By Sea*, further emphasizing Defendants' use of the Video as a corporate marketing tool to disparage Plaintiff.

## II. <u>Plaintiff's Real Estate Holdings Are Harmed</u>

78.     Plaintiff is involved in the ownership and operation of multiple real estate ventures with assets located predominantly in the State of Florida.

79.     Plaintiff understands that his businesses' lenders and investors received and watched the Video and read the Letter.

80.     Plaintiff understands that the Video and the Letter has interfered with pending refinancing, mortgage applications, and has caused investor withdrawals and lender refusals.

81.     For example, Plaintiff's business entities have  hundreds of millions of dollars in currently pending financing.

82.     As a result of the Video and the Letter, Niederst and his businesses may have lost opportunities or suffered harm due to their lenders and investors viewing of the Video and the Letter.

83.     Simply put, Defendants made numerous false statements about Plaintiff in the Video in an effort to promote Minuteman's real estate investment fund and purloin Plaintiff's real estate business, including Plaintiff's investors.

84.     As a result of the Video and its widespread publication, Plaintiff's real estate interests have been harmed all in an effort to promote Defendants' fledgling real estate investment fund.

### III. **Plaintiff Demands Retraction But Defendants Refuse and Publish the Letter**

85.     After viewing the Video, Plaintiff, through counsel, immediately demanded retraction of the Video by sending a letter to Defendants and Minuteman's publicly listed "Team Members" and "Advisors."

86.     When the Video was published to YouTube, Minuteman's publicly listed "Team Members" included: (i) Heavey; (ii) Hudak; (iii) Altman; (iv) Leslie; (v) Williams; (vi) Gunst; and (vii)  McGinty.

87.     When the Video was published to YouTube, Minuteman's publicly listed "Advisors" included: (i) Neundorfer; (ii) Croft; (iii) Croke; (iv) James-Lubin; and (v) Caraway.

88.     After Plaintiff demanded retraction, Defendants removed all references on Minuteman's website to its "Team Members" and "Advisors."

89.     Plaintiff also requested that YouTube remove the Video in accordance with its policies.

90.     Despite Plaintiff's demand for retraction, Defendants refused to remove the Video from YouTube and published the Letter on the Minuteman website.

### **CLAIM ONE**
### **(Defamation)**

91.     Plaintiff hereby incorporates each and every preceding paragraph as if fully restated herein.

92.    The Video and the Letter specifically mention Plaintiff by name and/ or inference.

93.    Defendants knowingly published false and disparaging statements about Plaintiff when, *inter alia*, Defendants published the Video and the Letter

94.    Plaintiff, by the virtue of his position as a member, shareholder, or owner of his real estate ventures, is so closely identified with his businesses that all statements mentioning his businesses of and concern Plaintiff.

95.    Defendants intentionally published the Video and the Letter about Plaintiff that includes, but is not limited to, false accusations that Plaintiff, and his businesses, cheats on his taxes, engages in mortgage fraud, has declared bankruptcy "500-some odd times," manipulated bankruptcy to enrich himself at the expense of hardworking citizens, utilizes "dark money," is corrupt, and is associated with extremist hate groups.

96.    Plaintiff, and his businesses, do not cheat on taxes, have not committed mortgage fraud, did not declare bankruptcy "500-some odd times," does not manipulate bankruptcy to enrich himself at the expense of hardworking citizens, does not use "dark money," and is not associated with extremist hate groups.

97.    The statements made in the Video and Letter constitute defamation *per se* because, *inter alia*, they contain false accusations that Plaintiff committed offenses involving moral turpitude or infamous crime, injure Plaintiff in his profession and trade, and/or subject Plaintiff to hatred, distrust, ridicule, contempt, and/or disgrace.

98. In the alternative, the statements made in the Video and Letter constitute defamation or defamation *per quod* because, *inter alia*, they name and disparage Plaintiff and/or contain false accusations that damage Plaintiff based on extrinsic facts.

99. At the time of publishing, Defendants knew or should have known that the statements made in the Video and the Letter were not true or substantially true.

100. Defendants published the Video and the Letter without privilege, authorization, or consent.

101. Defendants directly and deliberately communicated the Video and the Letter to third parties via internet publications. Plaintiff understands that the Video and the Letter have been seen by third parties throughout Florida and the world.

102. Defendants published the statements in the Video and the Letter intentionally with knowledge of their falsity and/or in reckless disregard of the truth, and with the degree of malice necessary to support an award of punitive damages.

103. As a result of the Video and the Letter, Plaintiff has suffered and will continue to suffer immediate and irreparable harm and injury, including significant reputational harm, mental anguish, and loss of business.

104. When Defendants published the Video and the Letter, Plaintiff was in the State of Florida (where most of business activities take place) and is a Florida resident, and as a result of Defendants' publication, Plaintiff and his substantial business interests in the State of Florida were harmed.

4854-6273-6716, v. 2

105.    As a result of Defendants' publication of the Video and the Letter, *inter alia*, Plaintiff has been harmed in an amount exceeding $75,000, but to ultimately be proven at trial.

## CLAIM TWO
### (Civil Claim for Criminal Act Under O.R.C. 2307.60)

106.    Plaintiff hereby incorporates each and every preceding paragraph as if fully restated herein.

107.    Defendants knowingly made telecommunications and/or knowingly permitted telecommunications to be made from a device under Defendants' control when they authored and published the Video and the Letter on the internet, in a matter which violated O.R.C. 2917.21, by and through O.R.C. 2307.60.

108.    O.R.C. 2307.60 independently authorizes a civil action for damages caused by criminal acts.

109.    Defendants' publication of the Video and the Letter are telecommunications which constitute the origination, emission, dissemination, transmission, and/or reception of data, images, signals, sounds, or other intelligence, or equivalence of intelligence of any nature of any communication system, i.e., the internet.

110.    Defendants intentionally made the telecommunications with the intent and purpose to harass, intimidate, and abuse Plaintiff.

111.    As a direct and proximate result of Defendants' violation of O.R.C.  2917.21, Plaintiff has suffered and sustained, and will continue to suffer and sustain, damages,

including investor withdrawal, loss of revenue, lost opportunities, loss of lenders, loss of productivity, significant reputational harm, severe emotional distress, mental anguish, and pain and suffering, indefinitely and in an amount to be proven at trial, but in excess of $75,000.

## CLAIM THREE
### (Federal Unfair Trade Practices Pursuant to 15 U.S.C. § 1125(a))

112.    Plaintiff hereby incorporates each and every preceding paragraph as if fully restated herein.

113.    Defendants have acted in interstate commerce by, *inter alia*, publishing the Video for the consuming public on the internet through YouTube and publishing the Letter.

114.    In so doing, Defendants have disparaged Plaintiff and falsely represented that Plaintiff is, *inter alia*, associated with individuals involved in the Capitol Events, is affiliated with extremist hate groups including, but not limited to, Nazis, is corrupt, and that Plaintiff committed mortgage fraud, enriched himself at the expense of hardworking citizens, and cheats on his taxes.

115.    The Video and the Letter have disparaged Plaintiff's reputation in the real estate industry and interfered with Plaintiff's real estate holdings.

116.    The Video and the Letter materially deceive or confuse the public as to Plaintiff's affiliation or connection with various extremist hate groups and those involved in the Capitol Events.

117.    The Video and the Letter also materially deceive Plaintiff's investors, lenders, and customers to believe that, *inter alia*, Plaintiff is associated with individuals involved with the Capitol Events, has committed mortgage fraud, and is a tax cheat.

118.    Defendants knowingly published the Video and the Letter with, *inter alia*, the intent to deceive the public and Plaintiff's investors, lenders, and customers as to Plaintiff's affiliation or connection with extremist hate groups and individuals involved in the Capitol Events.

119.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered damages and continues to suffer damages in an amount to be proven at trial but exceeding $75,000.00.

## CLAIM FOUR
### (Tortious Interference with Business Relationships)

120.    Plaintiff hereby incorporates each and every preceding paragraph as if fully rewritten herein.

121.    Plaintiff is engaged in many business relationships across the United States related to his real estate portfolios.

122.    Defendants had knowledge of Plaintiff's real estate portfolios because, *inter alia*, Defendants compete with Plaintiff for investors in real estate funds.

123.    Despite this knowledge, Defendants posted the Video and Letter to intentionally interfere with Plaintiff's business relationships in the real estate industry.

124.    Without privilege to do so, Defendants improperly interfered with Plaintiff's business relationships when they engaged in the above-described conduct, including, *inter*

*alia*, alleging that Plaintiff cheats on his taxes, committed millions of dollars in mortgage fraud, and is associated with extremist hate groups and individuals responsible for the Capitol Events.

125.    Defendants caused and may further cause Plaintiff's investors to withdraw from their real estate investment funds or lenders to refuse financings or refinancing because of the Video and the Letter.

126.    As a direct and proximate result of Defendants' interference, Plaintiff has suffered and will continue to suffer damages in an amount to be proven at trial but exceeding $75,000.00.

## CLAIM FIVE
### (Intentional Infliction of Emotional Distress)

127.    Plaintiff hereby incorporates each and every preceding paragraph as if fully restated herein.

128.    In creating the Video and the Letter, Defendants intended to cause Plaintiff serious emotional distress or knew they would cause Plaintiff serious emotional distress.

129.    Defendants' conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community.

130.    Defendants caused Plaintiff psychological injury and mental anguish that no reasonable person should be expected to endure.

4854-6273-6716, v. 2

131.     Defendants' conduct was intentional and evidences the degree of malice necessary to support an award of punitive damages.

132.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered significant reputational harm and sustained actual damages including, but not limited to, mental anguish, loss of revenue, lost productivity, loss of investors, and loss of intangible assets in an amount to be proved at trial, but in excess of $75,000.00.

## CLAIM SIX
### (Civil Harassment)

133.     Plaintiff hereby incorporates each and every preceding paragraph as if fully restated herein.

134.     Defendants published the Video and the Letter without Plaintiff's consent to cause, *inter alia*, nuisance, alarm, and/or substantial emotional distress to Plaintiff.

135.     Defendants' publication of the Video and the Letter was not wanted, uninvited, and unwelcomed.

136.     Defendants had no legitimate purpose to publish the Video or the Letter.

137.     As a result of Defendants' action, Plaintiff has been harmed in an amount exceeding $75,000, but ultimately to be proven at trial.

## CLAIM SEVEN
### (Civil Claim for Criminal Act Under Fla. Stat. 772.104)

138.     Plaintiff hereby incorporates each and every preceding paragraph as if fully restated herein.

4854-6273-6716, v. 2

139.     Florida Statute 772.104 independently authorizes a civil action for criminal acts.

140.     By publishing the Video and the Letter, Defendants have committed harassment under Florida Statute 784.048.

141.     Defendants have engaged in a course of conduct directed at Plaintiff to cause substantial emotional distress to Plaintiff.

142.     Defendants' course of conduct serves no legitimate purpose.

143.      As a result of the Video, Defendants have likely received proceeds through their criminal harassment of Plaintiff.

144.     Due to Defendants' actions, Plaintiff has been harmed in an amount exceeding $75,000, but ultimately to be proven at trial.

145.     Additionally, Plaintiff is entitled to treble damages, attorneys' fees, and court costs under Florida Statute 772.104(1).

## CLAIM EIGHT
**(Preliminary and Permanent Injunctions)**

146.     Plaintiff hereby incorporates each and every preceding paragraph as if fully restated herein.

147.     Despite Plaintiff's attempt to demand retraction of the statements, Defendants continue to publish the Video and the Letter about Plaintiff.

148.     Pursuant to Fed. R. Civ. P. 65, Plaintiff requests that this Court issue a preliminary and permanent injunction enjoining and restraining Defendants from creating

25

any additional publications similar to the Video or the Letter about Plaintiff on YouTube, and/or any and all other public or private forums known or unknown to Plaintiff.

149.    Plaintiff also requests that the Court issue an order mandating that Defendants permanently delete the Video and the Letter.

150.    An injunction is necessary to preserve Plaintiff's reputation and business interests.

151.    Without an order enjoining Defendants from continuing to disseminate the Video and the Letter, Plaintiff will continue to suffer significant and irreparable harm for which there is no adequate remedy at law.

152.    No third parties will be harmed by an injunction and the public interest in preventing the spread of Video and the Letter will be furthered by issuing an injunction.

**WHEREFORE,** Plaintiff prays for judgment as follows:

A.    A preliminary and permanent injunction be issued pursuant to Fed. R. Civ. P. 65, Fla. R. Civ. P. 1.610, and R.C. 2727.02 halting the continued dissemination of the publications contained herein, and further ordering Defendants to remove the Video, the Letter, and any other related statements regarding Plaintiff from the Internet, and request that Google, Bing!, Yahoo, YouTube, and other search engine providers remove the Video, the Letter, and any other related and/ or false statements from their respective search results;

B.    As to Claim One, compensatory damages, punitive damages, and reasonable attorneys' fees;

C.    As to Claim Two, compensatory damages, reasonable attorneys' fees and expenses;

D.    As to Claim Three, compensatory damages, punitive damages, and reasonable attorneys' fees and expenses;

E.    As to Claim Four, compensatory damages, punitive damages, attorneys' fees, and costs;

F.    As to Claim Five, compensatory damages, punitive damages, attorneys' fees, and costs;

G.  As to Claim Six, compensatory damages, punitive damages, attorneys' fees, and costs;

H.  As to Claim Seven, compensatory damages, treble damages, attorneys' fees, and costs;

I.  As to Claim Eight, an injunction enjoining and restraining Defendant from creating any additional publications similar to the Video and the Letter about Plaintiff on the internet, including but not limited to, on YouTube and/or any and all other public or private forums known or unknown to Plaintiff; and compelling Defendant to delete the Video, the Letter, and all related publications from the internet, including but not limited to, on YouTube and/or any and all public or private forums known or unknown to Plaintiff.

J.  Attorneys' fees and costs, as allowed by statute and for Defendants' intentional, willful, and malicious actions; and

K.  Such other relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiff respectfully demands a trial by jury pursuant to Fed. R. Civ. P. 38.

/s/ *Jon J. Pinney*
_____
JON J. PINNEY (0072761)

27

Respectfully Submitted,

**KOHRMAN JACKSON & KRANTZ LLP**

/s/ *Jon J. Pinney*

JON J. PINNEY (0072761)
JAY E. KRASOVEC (0069787)
KYLE D. STROUP (0099118)
One Cleveland Center, 29th Floor
1375 East Ninth Street
Cleveland, Ohio 44114-1793
Telephone: (216) 696-8700
Facsimile: (216) 621-6536
Email: jjp@kjk.com; jek@kjk.com; kds@kjk.com

*Counsel for Plaintiff*