**IN THE UNITED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF OHIO**

| | |
|---|---|
| DAVID NIEDERST, | Case No. 1:23-CV-117 |
| Plaintiff, | Judge Fleming |
| v. | Defendants' Heavey & |
| | Minuteman Capital LLC memorandum |
| MINUTEMAN CAPITAL, LLC, et. al., | supporting their motion to dismiss |
| | under Rule 12(b)(6) |
| Defendants. | |

This Court should dismiss plaintiff Niederst's entire complaint because Ohio's one-year statute of limitations bars every non-federal claim, and because laches bars the sole federal claim.

**Summary of information pleaded in complaint**

1. **The parties to this motion.**

The movants here are defendants Jonathan Heavey of Rocky River, Ohio and Minuteman Capital LLC. The complaint says that Heavey is an owner of Minuteman, and lists Minuteman's address as Rocky River. (Cmplnt, caption & ¶ 10, ECF 1.)

The plaintiff is David Niederst. The complaint lists his address as Cape Coral, Florida and says that he is a resident of Florida. (¶ 7.)

Niederst's complaint mentions that he has an "Ohio property." (Cmplnt ¶s 41, 47, 72.) The "Ohio property" is shown next at 22200 Lake Road in Rocky River, Ohio.



The lakefront home in the photo is the central backdrop for the video upon which Niederst's complaint rests.

2. **Diversity jurisdiction.**

The complaint invokes diversity jurisdiction under 28 U.S.C § 1332 based on its assertion that Niederst's "permanent" residence is in Florida and that none of the other defendants resides in Florida. (Cmplt ¶s 7, 26.)

3. **Federal question jurisdiction.**

One of the complaint's eight claims seeks recovery under 15 U.S.C. § 1125(a), which authorizes civil suits based on specified kinds of misrepresentations made in commercial advertising or promotion. So, the complaint asserts federal question jurisdiction under 28 U.S.C. § 1331. (Cmplt ¶ 26.)

4. **The video.**

A video produced and published on YouTube by defendant Heavey is the centerpiece of the complaint. (Cmplt ¶s 1, 5, 30, 39, 44-75, 101.) The video is Heavey's tongue-in-cheek response to the conspicuous, provocative displays that Niederst erected

on his front lawn during the 2020 presidential election campaign. (A copy of the video

accompanies this memorandum as a DVD marked **Exhibit A**.)







The complaint says that the video was first published "on or after" January 23, 2021, a few days after Joseph Biden was inaugurated as President of the United States. (Cmplnt ¶ 30.) According to the complaint, the video was viewed by Niederst's "neighbors," his tenants, customers, lenders, and investors, and has been seen by people "throughout Florida and the world." (Cmplt ¶s 5, 101.)

The complaint says that the video "has caused investor withdrawals," which implies the existence of at least one business entity, and the complaint says that Niederst's "businesses" may have lost opportunities. (Cmplnt ¶s 80, 82.) But no business entity associated with Niederst is a party here. Niederst the human being is the only plaintiff. (Cmplnt ¶ 7.)

5. **The letter.**

The complaint makes similar claims about a letter that was on the Minuteman website. (Cmplnt, *e.g.*, ¶s 4, 37, 42.) The complaint does not attach a copy of the letter or provide a verbatim rendition of what the letter said. The letter no longer appears on the Minuteman website. A copy of the letter accompanies this memorandum and motion as **Exhibit B**.

6. **The claims in the complaint.**

The crux of the complaint alleges that the video and the letter say false and defamatory things about Niederst. The complaint invokes these state law legal theories to address that alleged wrong: libel (claim 1); tortious interference with business relationships (claim 4); infliction of emotional distress (claim 5); civil harassment, which replicates the averments in the emotional distress claim (claim 6); civil claim for criminal act under Ohio law (claim 2) and civil claim for criminal act under Florida law (claim 7).

The complaint also cites a statutory cause of action under the federal Lanham Act, 15 U.S.C. § 1125(a) (claim 3) ("Lanham Act claim"). It allows for recovery based on factual statements that are false and damaging when the false statements are about the "nature, characteristics, [or] qualities" of the plaintiff's "goods, services, or commercial activities," and made in "commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B).

This Court should dismiss the entire complaint because Ohio's one-year statute of limitations for libel bars each non-federal claim, and laches bars the Lanham Act Claim.

**Argument**

1. **This Court may consider the DVD and letter submitted with this motion without converting the motion into one for summary judgment.**

A court "may consider . . . exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l College Athl. Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

Such exhibits to a motion to dismiss are considered "part of the pleadings." *Brown v. City of Upper Arlington*, No. 2:08–CV–849, 2008 WL 4758689 at *5 (S.D. Ohio 2008) (quotation marks and citation omitted).

The 6th Circuit explained why:

> [A] defendant may introduce certain pertinent documents if the plaintiff fails to do so . . . .
>
> Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied.

*Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Sorema*, 534 U.S. 506 (2002).

So, when a complaint seeks to recover for alleged libel, but does not attach the allegedly actionable publication, a motion to dismiss under Rule 12(b)(6) may attach it without converting the motion into one for summary judgment. *E.g.*, *Fudge v. Penthouse Internat'l Ltd*, 840 F.2d 1012, 1014-1015 & n.1 (1st Cir. 1988) (magazine article); *Clifford v. Trump*, 818 Fed.Appx. 746, 748 n.4, 751 (9th Cir. 2020) (tweet on Twitter); Knievel v. ESPN, 393 F.3d 1068, 1076-1077 (website); *McGee v. Simon & Schuster, Inc.*, 154 F. Supp.2d 1308, 1311 n.3 (S.D. Ohio 2001) (book).

Here, every count of Niederst's complaint seeks to recover for the video and the letter, but the complaint attached neither. (Cmplt ¶s 105, 109, 113, 123, 128, 134, 140.) Both accompany this motion to dismiss, and this Court should treat both as part of the complaint without converting the motion to dismiss into one for summary judgment.

2. **Where the complaint shows that the statute of limitations bars the suit, a court may dismiss the suit on a motion to dismiss under Rule 12(b)(6).**

Where it is apparent from the complaint's allegations that an affirmative defense applies, the court may grant dismissal under Rule 12(b)(6). A unanimous Supreme Court explained that, if the complaint's allegations "show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim." *Jones v. Bock*, 549 U.S. 199, 215 (2007); *accord Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978).

Thus, the 6th Circuit affirmed this Court's dismissal of a libel claim under Rule 12(b)(6) where the complaint showed that Ohio's statute of limitations barred the claim. *Friedler v. Equit. Life Assur. Soc'y*, 2003 WL 23172051 at *3, 86 Fed.Appx. 50, 53 (6th Cir., Dec. 24, 2003).

Here, as explained later in this memorandum, Niederst's complaint shows that the statute of limitations bars all of his non-federal claims.

3. **Ohio's statute of limitations applies to all of plaintiff Niederst's non-federal claims.**

   A. **A federal court hearing a diversity suit must apply the statute of limitations that the courts of the forum state would apply to the underlying claims.**

The doctrine of *Erie R. Co. v. Tompkins* requires federal courts, when deciding state law claims based on diversity of citizenship, to apply the statute of limitations that the courts would apply in the state where the federal court sits. *Guaranty Trust Co. v. York*, 326 U.S. 99, 109 (1945); *see gen'lly Tompkins*, 304 U.S. 64 (1930).

The doctrine seeks to avoid federal encroachment upon the judicial power of a state to reduce excessive forum-shopping between federal and state courts in the same state, and to advance equitable administration of state law as between federal courts and courts of the forum state. *York*, 326 U.S. at 109; *Walker v. Armco Steel Corp.*, 446 U.S. 740, 745, 753 (1980).

The Supreme Court explained:

> In essence, the intent of that decision was to insure that, in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court.
>
> The nub of the policy that underlies Erie R. Co. v. Tompkins is that for the same transaction the accident of a suit by a non-resident litigant in a federal court instead of in a State court a block away, should not lead to a substantially different result.

*York*, 326 U.S. at 109.

The federal court applies the limitations period of state law, and also the principles of state law that are an "integral" part of the state's limitations doctrine. E.g., *Walker*, 446 U.S. at 746, 748, 751, 752; *Blaha v. A.H. Robins & Co.*, 708 F.2d 238, 239 (6th Cir. 1983) (service of suit integral to starting limitations period); *Nettles v. Am. Tel. & Teleg. Co.*, 55 F.3d 1358, 1362 (8th Cir. 1995) (borrowing statute); *McMahan v. Deutsche Bank AG*, 892 F.3d 926, 933 (7th Cir. 2018) (whether "discovery rule" applies to begin limitations period).

If a state court would apply the statute of limitations of its home state even upon deciding that the law of another state governs the underlying claim, the federal court in that state must apply the forum state's statute of limitations in similar circumstances. *E.g, Wadley Crushed Stone Co., LLC v. Positive Step, Inc.*, 34 F.4th 1251, 1256 (11th Cir. 2022).

Where this Court presided over a personal injury complaint governed by New York law, the 6th Circuit affirmed dismissal of the suit based on Ohio's statute of limitations. *Phelps v. McClellan*, 30 F.3d 658, 660, 662 (6th Cir. 1994).

Where parties agreed by contract that California law governed interpretation and performance of the contract, the 6th Circuit affirmed this Court's decision to apply Ohio's statute of limitations to the plaintiff's breach of contract suit. *Cole v. Mileti*, 133 F.3d 433, 435, 436, 437 (6th Cir. 1998).

**B. Ohio courts apply Ohio's statute of limitations even where another state's law governs the underlying claims.**

To determine, in a diversity case, whether to apply the forum state's statute of limitations or the statute of limitations of another state, the federal court must apply the

conflict of law principles as the courts of the forum state apply them. *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496 (1941).

In choice of law situations, Ohio courts apply Ohio's statute of limitations even if the law of another state governs the underlying claims. *Taylor v. First Resol. Invest. Corp.*, 148 Ohio St.3d 627, 637, 2016-Ohio-3444, 72 N.E.3d 573, 585, ¶s 36, 37.

Ohio's statute of limitations are "remedial," designed to "protect defendants from stale claims," and so nearly always govern in Ohio courts. *Taylor*, 148 Ohio St.3d at 636, 637, 2016-Ohio-3444, 72 N.E.3d at 584, 585, ¶s 34, 35.

Ohio courts apply the statute of limitations of another state only where Ohio's borrowing statute directs the court to "borrow" the limitation period of another state. *Taylor*, 148 Ohio St.3d at 637, 2016-Ohio-3444, 72 N.E.3d at 585, ¶ 37.

Although no single opinion in *Taylor* commanded a majority of the Ohio Supreme Court, all opinions agreed that, in Ohio courts, Ohio's statute of limitations controls unless Ohio's borrowing statute applies. *Taylor*, 148 Ohio St.3d at 637, 2016-Ohio-3444, 72 N.E.3d at 585, ¶ 37 (plurality op.); *id* at ¶ 109 (Kennedy, J., concurring); *id*. at ¶s 137-139 (O'Connor, C.J., dissenting).

Ohio's borrowing statute allows Ohio courts to borrow another state's statute of limitations only where the other state's statute of limitations would bar the underlying claims. R.C. 2305.03(B); *Taylor*, 148 Ohio St.3d at 637, 2016-Ohio-3444, 72 N.E.3d at 585, ¶ 37.

Thus, Ohio's statute of limitations governs suits filed in Ohio courts even if the claim would have been timely if filed in another state's courts. *Mindlin v. Zell*, 10th Dist. 11AP–983, 2012 WL 3200718 at *2, 2012-Ohio-3543 ¶ 15 (Aug. 7, 2012).

Here, by emphasizing that plaintiff Niederst maintains his "permanent" residence in Florida, the complaint suggests that Niederst may urge that Florida law governs the substance of most of his claims. Movants disagree, but that does not matter much.

When applying Ohio choice of law principles, Ohio courts enforce Ohio's statute of limitations regardless of whether another state's laws govern the underlying claims and regardless of whether the claims would have been timely if filed in that other state. So, this Court should rule that Ohio's statute of limitations applies to all of Niederst's non-federal claims, regardless of whether Ohio law governs the substance of those claims.

4. **Ohio's one-year statute of limitations bars Niederst's libel claim.**

Ohio's statute of limitations for libel is one year after the cause of action has accrued. Ohio Rev. Code § 2305.11(A). A cause of action for libel accrues "upon the first publication of the matter complained of." *T.S. v. Plain Dealer*, 194 Ohio 194 Ohio App.3d 30, 32, 2011-Ohio-2935, 954 N.E.2d 213, 214, ¶ 7 (8th Dist.) (quotation marks and citation omitted).

Ohio rejects the notion that making a publication continuously available on a website extends the one-year limitations period for libel. *E.g.*, *T.S.*, 194 Ohio App.3d at 31-32, 2011-Ohio-2935, 954 N.E.2d at 214, 215, ¶s 3, 7, 8; *Spitzer v. Knapp*, 5th Dist. No. 2017-CVH-09-0571, 2019 WL 2764071 at *5, 2019-Ohio-2770, ¶s 25-29 (July 1, 2019).

Claim One of Niederst's complaint alleges "defamation," which is libel when written or broadcast. *E.g.*, *Holley v. WBNS 10TV, Inc.*, 149 Ohio App.3d 22, 27, 2002-Ohio-4315, 775 N.E.2d 579, 582, ¶s 29, 30 (10th Dist.)

Claim One asserts that both "the Letter" and "the Video" defamed Niederst. (Cmplt ¶s 92-105.) The complaint identifies the allegedly defamatory video as being posted on YouTube "on or after January 23, 2021." (Cmplt ¶ 30.) Niederst filed the complaint here virtually two years later, on January 22, 2023.

The complaint neither attached the allegedly defamatory letter nor avers when it was published. But a copy of the body of the letter accompanies this memorandum as Exhibit B. The first sentence refers to the content of the video. It says: "I'm Jon Heavey, the guy who lit off the fireworks on a calm and balmy waters of Lake Erie." (Compare with the video, submitted as DVD marked Exhibit A and with Cmplt ¶s 73.)

The letter, therefore, was published sometime after the video was posted. Both, therefore, were first published over a year before Niederst filed this suit. So, Ohio's one-year statute of limitations for libel bars Niederst's libel claim, requiring its dismissal. Ohio Rev. Code § 2305.11(A)(1).

5. **Ohio's one-year statute of limitations also bars Niederst's other non-federal claims.**

   A. **Where a complaint alleges various torts flowing from people reading an allegedly false and defamatory publication, Ohio's one-year statute of limitations for libel governs, regardless of the tort pled.**

When deciding which of Ohio's statutes of limitations applies, Ohio courts rely on the factual essence of the alleged wrongful acts and the resulting claimed injury instead of the name of the tort asserted. *Doe v. First United Methodist Church*, 68 Ohio St.3d 531, 536-537, 629 N.E.2d 402, 407.

Where the predominant subject matter is damage to reputation caused by people reading an allegedly false publication, Ohio courts treat the tort as libel and apply the one-year statute of limitations. That is so regardless of whether the complaint also

pleaded libel. *E.g., Ra v. Ohio Atty Gen'l's Office*, 2020-Ohio-1346, 153 N.E.3d 759, 765, 768, ¶s 18, 23, 24 (10th Dist.); *Smith v. Nat'l Western Life*, 2017-Ohio-4184, 92 N.E.3d 169, 173, 174, 175, ¶s 10, 12-14, 18 (8th Dist.); *Singh v. ABA Pub.*, 10th Dist. No. 02AP-1125, 2003 WL 21027897 at *4, 2003-Ohio-2314, ¶s 25-27 (May 8, 2003); *Breno v. City of Mentor*, 8th Dist. No. 81861, 2003 WL 21757503 at *2-*3, ¶s 10-13 *Worpenberg v. Kroger Co.*, 1st Dist. No. C-010381, 2002 WL 362855 at *7 (Mar. 8, 2002).

In *Ra*, the plaintiff did not sue for libel, but claimed that an allegedly false and derogatory news release, which the defendant declined to remove from the defendant's website, had the effect of interfering with the plaintiff's relationships in his real estate business, harassed him, and ridiculed him to peers in the industry. *Ra*, 2020-Ohio-1346, 153 N.E.3d at 762-764, 768, ¶s 3, 5-8, 25.

He and his real estate business asserted three tort claims: tortious interference with business relations, intentional infliction of emotional distress, and negligence.

In granting summary judgment to the defendant, the trial court treated the three tort claims as libel claims, and the court applied a libel privilege without addressing libel's one-year statute of limitations. The court of appeals affirmed, but ruled that the one-year statute of limitations for libel applied to all three tort claims, and declined to address the privilege question. *Ra*, 2020-Ohio-1346, 153 N.E.3d at 769, 770, ¶s 26, 28-30; Ohio Rev. Code § 2305.11 (A)(1).

The court of appeals ruled that "each tort claim . . . is inextricably premised on appellee's communication of the allegedly false news release," and that "absent the allegedly false news release, there would be no basis for the negligence, tortious

interference with business relationships, and intentional emotional distress claims." *Ra*, 2020-Ohio-1346, 153 N.E.3d at 768, ¶ 23.

In *Smith*, the plaintiff sued for libel and tortious interference with business relations based on an allegedly false and defamatory publication. The court of appeals affirmed dismissal of the libel claim under the one-year statute of limitations. Then, the court ruled that the same statute of limitations also barred the tortious interference claim even though that tort normally had a longer limitations period and even though the trial court had not decided that question. *Smith*, 2017-Ohio-4184, 92 N.E.3d at 173-174, 175 ¶s 10-14, 18.

Where separately pleaded torts arose from "the same tortious act, only a single cause of action arises, the different injuries occasioned thereby being separate items of damage from such act." *Smith*, 2017-Ohio-4184, 92 N.E.3d at 173, ¶ 12 (quotation marks and citation omitted).

Because the tortious interference claim was based on the same conduct underlying the libel claim, the court of appeals ruled that the one-year statute of limitations for libel governed to both claims—which was consistent with "overwhelming" caselaw authority. *Smith*, 2017-Ohio-4184, 92 N.E.3d at 173, 175, ¶s 13, 18.

### B. Niederst's non-federal claims amount to libel.

Niederst's complaint emphasizes from the outset that it rests two allegedly false and defamatory publications: the video and the letter. The only wrongful acts alleged are the posting of the video and the letter online, which Heavey and Minuteman then passively allowed to remain online. Everything else that the complaint alleges amounts to various sorts of injury or damage resulting solely from people choosing to view the

video or the letter online and then reacting to their content in some way adverse to Niederst's interests or well-being. (Cmplt ¶s 109, 110 (harass & intimidate, claim 2); ¶s 114-119 (disparage and cause readers to avoid doing business with Niederst, claim 3); ¶s 123, 125 (cause readers to avoid doing business with Niederst, claim 4); ¶s 129, 130 (cause Niederst to experience emotional distress, claim 5); ¶s 134, 135 (cause Niederst to experience emotional distress, claim 6); ¶ 140 (video and letter were harassing, count 7).

Absent the posting of the video and the letter online, where Niederst and other people could view them if they wanted to, there would be no claims here, not even the Lanham Act claim.

This lawsuit is a libel suit, and only a libel suit. This Court, therefore, should apply and enforce Ohio's one-year statute of limitations to dismiss each of Niederst's non-federal claims, just as Ohio courts would do.

6. **Laches bars Niederst's Lanham Act claim.**

Congress has not enacted a statute of limitations for the civil Lanham Act claim comprising claim 3 of Niederst's complaint, 15 U.S.C. § 1125(a)(1). Laches governs whether a Lanham Act claim is timely. *E.g.*, *Leonard Truck & Trailer Inc. v. Leonard Bldgs & Truck Accessories*, No. 4:21-cv-2362, 2022 WL 2757724 at *3 (N.D. Ohio 2022).

Where the plaintiff filed a Lanham Act claim after the limitation period of an analogous state statute of limitations, a "strong presumption" arises in favor of dismissing the claim as barred by laches. *Leonard Truck*, at *3.

Here, as already shown, Niederst's Lanham Act claim is in substance a state-law libel claim based on the same video and letter as the complaint's libel claim, and based

on the allegedly harmful effects arising from the reactions of readers who chose to view the video or the letter. *Compare* Cmplt ¶s 94-105 (libel) *with* ¶s 113-118 (Lanham Act).

The claim rests explicitly and solely on the video and the letter. (Cmplt ¶ 113.) In its Lanham Act claim, the complaint alleges that Heavey and Minuteman "disparaged Plaintiff," associating him with the January 6 insurrectionists and extremist hate groups, saying that he committed mortgage fraud and cheats on his taxes, and otherwise "disparaged Plaintiff's reputation." (Cmplt ¶s 114, 115.)

Just as Ohio's one-year statute of limitations for libel defeats Niederst's libel claim, and his other non-federal claims, it creates a strong presumption of laches. And so, this Court should dismiss the Lanham Act claim as well.

**Conclusion**

Niederst's final claim, count 9, seeks a mandatory injunction requiring the defendants to permanently delete the video and the letter from Heavey's or Minuteman's online pages. (Cmplt ¶ 149.) The letter has been removed, but the video remains on YouTube.

The First Amendment bars enjoining a claimed libel as a prior restraint of the right to publish—that is, barring its continued publication before any court has rendered a final nonappealable judgment that a contested publication is libel. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976).

Where a libel plaintiff alleged that the defendant was circulating emails that impersonated the plaintiff, saying in the plaintiff's impersonated voice that the plaintiff is a registered sex offender, the United States District Court for the Southern District of Ohio refused to grant a temporary injunction. *Alahverdian v. Nemelka,* No. 3:15-cv-060,

2015 WL 1276453 (S.D. Ohio 2015); *accord Karhani v. Meijer*, 270 F.Supp.2d 926, 930 n.4 (E.D. Mich. 2003) (alleged libel).

So, in addition to the statute of limitations barring the relief sought in the first eight claims, the First Amendment bars the relief sought in the ninth claim.

/s/ David Marburger
David Marburger (0025747)
Marburger Law LLC
14700 Detroit Avenue, Suite One
Cleveland, Ohio 44107
T: 216.930.0500
E: david@marburger-law.com

*Counsel for Jonathan D. Heavey & Minuteman Capital, LLC*

CERTIFICATE OF SERVICE

On April 10, 2023, the undersigned counsel served a copy of the foregoing memorandum upon counsel for the plaintiff and other defendants via the court's electronic filing system:

Jon J. Pinney
Kohrman Jackson & Krantz LLP
One Cleveland Center, 29th Floor
1375 East 9th St.
Cleveland, OH 44114-1793
jjp@kjk.com


Jay E. Krasovec
Kohrman Jackson & Krantz LLP
One Cleveland Center, 29th Floor
1375 East 9th St.
Cleveland, OH 44114-1793
jek@kjk.com


Marc Dann
Dann Law Firm
15000 Madison Ave.
Cleveland, OH 44107
mdann@dannlaw.com


/s David Marburger
David Marburger